Nott, J.,
delivered the opinion of the court:
The judgment in this case was deliberately considered by the court after its merits had been elaborately argued by counsel. If the court committed an error of law, the defendants had a sufficient remedy, by appeal to the Supreme Court. If an error of fact was committed, arising from inadvertence or mistake, the court was willing to correct its oversight But the motion now made is grounded on a supposed error of law, or rather upon a decision of the Supreme Court, pronounced in another case since the judgment in this was rendered.
The Act 25th June, 1868, (15 Stat. L. p. 75, § 2,) under which the motion is made, empowers this court “ to grant a new trial” upon such “evidence as shall reasonably satisfy the court that any fraud, wrong, or injustice in the premises has been done to the United States.” We cannot say that “fraud, wrong, or injustice” has been done when the law previously provided an ample measure of redress. The inconveniences of an appeal constitute no ground for th e motion. The failure to appeal, with these defend-fendants, as with all others, must be considered their misfortune or their fault. It does not, however, exist here, for an appeal was taken, though subsequently abandoned.
In the present case we reach this conclusion with the less reluctance, because the equity appears to be strongly with the claimant, a citizen who, with no intent to do wrong, invested his money in property in a manner which this court, at least, thought proper and lawful, and who afterward rendered signal patriotic services to his country. In such a case, the judgment should not be set aside, unless there would be unquestionable wrong or injustice done.to the defendants by refusing the motion.
The doctrine laid down by the Supreme Court in Grossmayer's *712 Case we do not propose to extend by ajiplying it to cases resting on different facts. In tliis case' the claimant was involuntarily within the rebel territory when the purchase was made; the cotton was bought with Confederate money; he toot nothing into the insurrectionary district; he brought nothing out. His commercial intercourse with the enemy is only theoretically interdicted by the statute; practically it worked no possible advantage to the Confederacy. If anything it tended to withdraw from them their real wealth, and to hasten the depreciation of their worthless money.
The Supreme Court has held that a loyal citizen residing within the insurrectionary district had the right to acquire property, even though he bought of rebels; and that for the proceeds he may maintain an action under the Abandoned or captured, property act, (Pollard’s Case.) We do not think that a loyal citizen did not possess that right, because his home lay within a northern State; nor because his residence in the insurrectionary district was involuntary. This claimant was bound neither to bring his Confederate money through the lines, nor to throw it away. While within the rebel territory he possessed all the rights of any resident to buy and sell, to acquire property and to dispose of property, so long as he gave neither aid nor comfort to the rebellion. The motion for a new trial must be denied.